**RECORD NUMBER: 13-4455**

# United States Court of Appeals
## for the
# Fourth Circuit

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**JOSE D. VANEGAS,**

*Appellant.*

**ON REMAND FROM THE UNITED STATES SUPREME COURT**

# SUPPLEMENTAL BRIEF OF APPELLANT

**JOSEPH R. POPE**
**WILLIAMS MULLEN**
**A PROFESSIONAL CORPORATION**
**200 South 10th Street (23219)**
**P.O. Box 1320**
**Richmond, Virginia 23218**
**(804) 420-6000**

*Counsel for Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Jurisdictional Statement .......................................................................................... 1

Statement of the Issues ........................................................................................... 1

Statement of the Case and Factual Background .................................................... 1

Summary of the Argument ..................................................................................... 4

Standard of Review ................................................................................................. 5

Argument ................................................................................................................. 5

      A.    Vanegas Preserved His Challenge to the Warrantless Search of His Cell Phone ..................................................................................... 5

      B.    The Search of Vanegas' Phone Violated the Fourth Amendment of the Constitution ............................................................................... 7

           1.    Development of the search incident to arrest exception ............... 8

           2.    *Riley v. California* ......................................................................... 10

           3.    The unlawful search of Vanegas' cell phone ............................... 13

Conclusion ............................................................................................................. 13

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*,
    556 U.S. 332 (2009) ................................................................................. 8, 10

*Chimel v. California*,
    395 U.S. 752 (1969) ...................................................................... 8, 9, 10, 12

*Davis v. United States*,
    131 S. Ct. 2419 (2011) ...................................................................................13

*Katz v. United States*,
    389 U.S. 347 (1967) ........................................................................................ 8

*Riley v. California*,
    573 U.S. ___, 134 S. Ct. 2473 (2014) ................................................... passim

*Thornton v. United States*,
    541 U.S. 615 (2004) ......................................................................................10

*United States v. Chadwick*,
    433 U.S. 1 (1977) ............................................................................................ 9

*United States v. Contreras*,
    667 F.2d 976 (11th Cir. 1982) .................................................................... 5, 6

*United States v. Foster*,
    634 F.3d 243 (4th Cir. 2011) ......................................................................... 5

*United States v. Hicks*,
    524 F.2d 1001 (5th Cir. 1975) .................................................................... 5, 6

*United States v. Moore*,
    769 F.3d 264 (4th Cir. 2014) ..................................................................... 4, 7

*United States v. Murphy*,
    552 F.3d 405 (4th Cir. 2009) ........................................................................13

*United States v. Oldfield*,
    859 F.2d 392 (6th Cir. 1988) .................................................................................. 6

*United States v. Robinson*,
    414 U.S. 218 (1973) ............................................................................................... 9

*United States v. Ulloa*,
    882 F.2d 41 (2d Cir. 1989) ..................................................................................... 6

*United States v. Vanegas*,
    560 F. App'x 191 (Mar. 10, 2014) .......................................................................... 4

*United States v. Vasquez*,
    858 F.2d 1387 (9th Cir. 1988) ............................................................................ 5, 6

*Wong Sun v. United States*,
    371 U.S. 471 (1963) ............................................................................................... 6

*Wyoming v. Houghton*,
    526 U.S. 295 (1999) ............................................................................................. 12

**Rules, Statutes, and Other Authorities**

18 U.S.C. § 924(c)(1)(A) .............................................................................................. 3

21 U.S.C. § 841(b)(1)(A) .............................................................................................. 3

28 U.S.C. § 1291 .......................................................................................................... 1

Fed. R. Crim. P. 12(b)(3) ............................................................................................. 4

Fed. R. Crim. P. 12(b)(3)(C) ........................................................................................ 5

Fed. R. Crim. P. 12(c)(3) .............................................................................................. 5

U.S. Const. amend. IV ........................................................................................ passim

The Honorable M. Blane Michael, *Reading the Fourth Amendment: Guidance from the Mischief that Gave it Birth*, 85 N.Y.U.L. Rev. 905, 907–09 (2010) ................................. 8

## JURISDICTIONAL STATEMENT

This case is before the Court on remand from the United States Supreme Court. Because this case originated as a final decision of the United States District Court for the Eastern District of Virginia, this Court possesses jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This case was remanded by the United States Supreme Court in light of its ruling in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473 (2014) (holding warrantless search of digital contents of cell phone incident to arrest unconstitutional). Upon remand, this Court on January 7, 2015, ordered the parties to brief the following two issues:

    1.    Whether a challenge to the warrantless search of Defendant Vangas' cell phones was preserved.

    2.    If the issue was preserved, whether the search violated Vanegas' Fourth Amendment rights.

## STATEMENT OF THE CASE AND FACTUAL BACKGROUND

Vanegas was one of thirty-eight defendants charged as part of a broad conspiracy to import cocaine from Honduras and distribute it within the United States. The conspiracy worked like this: Drug suppliers in Honduras hid large quantities of cocaine inside wooden picture frames and shoes. Couriers then took the items aboard flights bound for the United States. After arriving in the United States,

the couriers delivered the items to distributors who then extracted the cocaine and sold it to dealers or directly to consumers. (J.A. 212–14.)

The FBI got wind of the conspiracy in autumn 2011 when local police arrested two individuals in possession of cocaine concealed in wooden picture frames and plaques. (J.A. 210.) As the investigation progressed, the FBI identified Samuel Benitez-Pineda as a distributor. This led investigators to tap Benitez-Pineda's phone. The phone taps led them to Vanegas. (J.A. 228–30.) From the intercepted calls, the FBI suspected Vanegas was purchasing cocaine from Benitez-Pineda and distributing it to others. (J.A. 228–31.)

The FBI arrested Vanegas at the apartment he shared with his wife and two daughters on May 10, 2012. (J.A. 248–50, 350–52.) Incident to the arrest, investigators conducted a search of Vanegas' apartment. They located and seized a loaded 9 millimeter semiautomatic handgun, 3.3 grams of cocaine, a gun holder, a box of ammunition, digital scales, and pipes. (J.A. 352–70.) Investigators also located and seized an iPhone belonging to Vanegas. (J.A. 369.) Even though they did not have a warrant, FBI agents extracted and copied data from the phone. (J.A. 370.) Investigators also located and seized a number of micro SD memory cards belonging to Vanegas.[1] (J.A. 373.) Without a warrant, FBI agents extracted and copied data from the seized SD cards. (J.A. 374–75.)

---

[1] An SD card is a secure digital memory card. They are used in electronic devices such as mobile phone and digital cameras.

2

The Government charged Vanegas with conspiracy to distribute cocaine under 21 U.S.C. § 841(b)(1)(A) and possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). Vanegas proceeded to trial where the Government introduced into evidence numerous photographs and text messages taken from Vanegas' phone and SD cards. (J.A. 270–73, 367–71, 75.) The Government also introduced a witness, Carl T. Walsh, Jr. ("Walsh"), whose identity was made known to them through the text messages taken from Vanegas' phone. (J.A. 262–73.) The jury found Vanegas guilty of both counts.

At sentencing, Vanegas for the first time argued that the evidence taken from his cell phone was illegally obtained and the testimony elicited from Walsh was fruit of the poisonous tree. (J.A. 477.) The district court rejected this argument, stating: "I have looked very carefully at the evidence. The Government didn't, in my opinion, do anything unlawful in its investigation of this case." (J.A. 477–78.) The district court sentenced Vanegas to sixty months on the conspiracy to distribute cocaine charge and sixty months on the firearm charge, which by statute must run consecutively to the drug charge. (J.A. 478.)

Vanegas appealed his conviction. Among the issues presented on appeal were (1) whether "[t]he arrest and search incident to arrest were unconstitutional" and (2) whether "[t]he search of Appellant's cellular telephone was unconstitutional."[2]

---

[2] On brief, Vanegas' appellate counsel wrote, "None of these issues were presented to the Court or litigated below. Counsel has fully explained to the Appellant that these

3

(Appellant's Br. 4.) This Court rejected Vanegas' appeal and affirmed his conviction. *See United States v. Vanegas*, 560 F. App'x 191 (Mar. 10, 2014). Vanegas filed a petition for writ of certiorari to the United States Supreme Court in which he argued that the search of his cell phone without a warrant was in violation of the Fourth Amendment as interpreted by the Supreme Court in *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473 (2014). The Supreme Court on October 14, 2014, granted Vanegas' petition for certiorari, vacated this Court's ruling, and remanded for further proceedings.

## SUMMARY OF THE ARGUMENT

Vanegas preserved the issue of whether the evidence obtained from his cell phone should be suppressed. Admittedly, Vanegas did not move to suppress the evidence before trial as required by Fed. R. Crim. P. 12(b)(3). However, Vanegas raised the issue at sentencing and the district court apparently found good cause to excuse the waiver by ruling on the merits of Vanegas' argument. The district court made no finding that Vanegas had waived his suppression claim. This is unlike *United States v. Moore*, 769 F.3d 264 (4th Cir. 2014), where the district court expressly found the defendant had waived any Fourth Amendment challenge to the evidence by not bringing a motion to suppress before trial.

---

issues are not proper for a direct appeal and that in counsel's opinion, have no legal or factual merit at this stage of the proceedings." (Appellant's Br. 4.)

4

Based on the reasoning of *Riley*, the warrantless search of Vanegas' cell phone violated the Fourth Amendment, and all evidence obtained as a product of that unlawful search is fruit of the poisonous tree.

## STANDARD OF REVIEW

When reviewing a district court's denial of a motion to suppress, this Court examines the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Foster*, 634 F.3d 243, 246 (4th Cir. 2011).

## ARGUMENT

### A.    Vanegas Preserved His Challenge to the Warrantless Search of His Cell Phone.

The Federal Rules of Criminal Procedure require parties to file motions to suppress prior to trial. Fed. R. Crim. P. 12(b)(3)(C). Failure to file a suppression motion before the pretrial deadline operates as a waiver unless the court grants relief from the waiver for "good cause." Fed. R. Crim. P. 12(c)(3). But when the trial court considers the substance of a motion to suppress after the filing deadline passes the matter is not waived and is preserved for appeal. *See United States v. Vasquez*, 858 F.2d 1387, 1389 (9th Cir. 1988) ("When a court rules on the merits on an untimely suppression motion, it implicitly concludes that there is adequate cause to grant relief from a waiver of the right to seek suppression."); *United States v. Contreras*, 667 F.2d 976, 978 n.2 (11th Cir. 1982); *United States v. Hicks*, 524 F.2d 1001, 1003 (5th Cir. 1975)

5

("[B]ecause the district judge did proceed to entertain and rule on the motion during trial, it may not be held untimely here.").[3]

At his sentencing, Vanegas argued that the Government introduced at trial hundreds of text messages unlawfully obtained from his cell phone. Vanegas also argued that this unlawfully obtained evidence led the Government to Walsh who then testified against Vanegas. (J.A. 477.) Thus, Walsh's testimony was "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (noting that if evidence is obtained during a violation of the suspect's Fourth Amendment rights (*i.e.* an "exploitation of that illegality"), then that evidence is a "fruit of the poisonous tree" and may not be used against that defendant) (internal citations omitted).

The trial court entertained Vanegas' argument and rejected it. (J.A. 478 ("I have looked very carefully at the evidence. The Government didn't, in my opinion, do anything unlawful in its investigation of this case.").) Applying the reasoning of *Vasquez*, *Contreras*, and *Hicks*, by entertaining Vanegas' claims, the trial court implicitly found good cause to excuse the belated motion to suppress. So this Court may reach the issue of whether Vanegas' Fourth Amendment rights were violated.

---

[3] To be sure, other courts of appeals have concluded that failure to bring a timely motion to suppress works as a waiver even if the district court considers the merits. *United States v. Ulloa*, 882 F.2d 41, 43 (2d Cir. 1989) (finding failure to make timely motion to suppress constitutes waiver of that right even where trial court considers the merits), and *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988) (issues raised in untimely motion to suppress are waived on appeal "even though the district court rules on the merits"). This Court has not squarely resolved the issue.

6

Even if the Government should argue this result is foreclosed by *United States v. Moore*, 769 F.3d 264 (4th Cir. 2014), that argument rings hollow. In *Moore*, immediately before closing arguments the defendant moved to suppress evidence introduced by the Government on grounds it was illegally obtained. The district court denied the motion without briefing based on its "recollection of the evidence." *Id.* at 267. At sentencing, the district court denied a motion to reconsider its earlier suppression ruling on grounds that the defendant had waived the argument by not raising it before trial as required by the Federal Rules of Criminal Procedure. *Id.* Through its ruling on defendant's motion to reconsider, the district court made it clear good cause did not exist to entertain the defendant's suppression claim. *Id.* at 268–69. In contrast to *Moore*, there was no express waiver finding by the district court in this case.

While the procedure employed by Vanegas to raise his Fourth Amendment claim was certainly contrary to that prescribed by the Federal Rules of Criminal Procedure, the district court did not rule the issue had been waived and considered the argument's merits. The issue was therefore properly preserved.

### B.   The Search of Vanegas' Phone Violated the Fourth Amendment of the Constitution.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

7

persons or things to be seized." U.S. Const. amend. IV. The amendment grew out of American colonial opposition to British search and seizure practices, most notably the use of writs of assistance, which gave British customs officials broad latitude to search houses, shops, cellars, warehouses, and other places for smuggled goods. The Honorable M. Blane Michael, *Reading the Fourth Amendment: Guidance from the Mischief that Gave it Birth*, 85 N.Y.U.L. Rev. 905, 907–09 (2010).

A warrantless search is *per se* unreasonable under the Fourth Amendment, unless one of "a few specifically established and well-delineated exceptions" applies. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)) (internal quotation marks omitted). One of those exceptions allows the police, when they make a lawful arrest, to search "the arrestee's person and the area within his immediate control." *Id.* at 339 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)) (internal quotation marks omitted).

### 1.    Development of the search incident to arrest exception

What has become known as the modern search incident to arrest exception emerged from *Chimel v. California*, 395 U.S. 752 (1969), where the Supreme Court held that a warrantless search of the defendant's entire house was not justified by the fact that the search occurred as part of his valid arrest. The Court found that the search incident to arrest exception permits an arresting officer "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction" and to search "the area into which an arrestee might reach in order to grab a weapon

8

or evidentiary items." *Id.* at 763. The justifications underlying the exception, as articulated in *Chimel*, were protecting officer safety and ensuring the preservation of evidence. *Id.*

The Supreme Court soon applied the *Chimel* analysis in the context of a search of the arrestee's person in *United States v. Robinson*, 414 U.S. 218 (1973). Robinson was arrested for driving with a revoked license, and in conducting a pat down, the arresting officer felt an object he could not identify in Robinson's coat pocket. *Id.* at 220–23. He removed the object, which turned out to be a crumpled cigarette package and opened it. Inside were fourteen capsules of heroin. *Id.* at 223. The Court held that the warrantless search of the cigarette package was valid. It explained that the police have the authority to conduct "a full search of the person" incident to a lawful arrest. *Id.* at 235. And "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, [the officer] was entitled to inspect it." *Id.* at 236. *Robinson* echoed the principle discussed in *Chimel* that "[t]he justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Id.* at 234. The Court in *United States v. Chadwick*, 433 U.S. 1 (1977), later clarified that *Robinson*'s holding was limited to "personal property . . . immediately associated with the person of the arrestee." *Id.* at 15.

The doctrine was further defined in *Arizona v. Gant*, 556 U.S. 332 (2009), which involved the search of an arrestee's vehicle. *Id.* at 343. Once again, the Court reiterated the twin rationales underlying the exception first articulated in *Chimel*: "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at 339 (citing *Chimel*, 395 U.S. at 763). Relying on those safety and evidentiary justifications, the Court found that a search of a vehicle incident to arrest is lawful "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343.[4]

### 2. *Riley v. California*

Applying the principles of *Chimel*, the Court in *Riley v. California* rejected the claim that the search incident to arrest exception to the warrant requirement should extend to cell phones. 134 S. Ct. 2473 (2014). In *Riley*, the Court considered two cases presenting the same issue: whether a search of a cell phone incident to a lawful custodial arrest is unreasonable under the Fourth Amendment. In the first case, after the defendant was placed into custody, police without a warrant searched and seized his "smart phone," uncovering evidence of gang ties. *Id.* at 2480. About two hours

---

[4] The Court also added an independent exception for the warrantless search of a vehicle's passenger compartment "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (Scalia, J., concurring in judgment)). That exception stems not from *Chimel* but from "circumstances unique to the vehicle context." 556 U.S. at 343.

10

after the arrest, another officer, again without a warrant, accessed defendant's phone and discovered records implicating him in a shooting that occurred three weeks earlier. *Id.* at 2481. The defendant was charged, in connection with the earlier shooting, with attempted murder and other firearm offenses. *Id.* The trial court denied defendant's motion to suppress. Defendant proceeded to trial where he was found guilty. The Supreme Court of California affirmed the conviction. *Id.* at 2481.

In the second case, police observed the defendant make a drug sale. They placed him into custody and took him to the police station. There, officers seized two cell phones. They noticed that one of the phones was repeatedly receiving calls from a source identified as "my house" on the phone's external screen. Without a warrant, they opened the phone and accessed the phone's call log. They then traced the number to the defendant's apartment where they discovered a large amount of crack cocaine, marijuana, cash, and a firearm. *Id.* at 2481. The defendant was charged with various drug and firearm related offenses. He moved to suppress the evidence obtained from the search of his apartment, arguing it was fruit of an unconstitutional search of his cell phone. The district court denied the motion. The defendant was subsequently convicted of all charges. The First Circuit reversed the denial of defendant's motion to suppress and vacated his conviction on grounds that the warrantless search of defendant's phone violated the Fourth Amendment. *Id.* at 2482.

The Court unanimously found the warrantless search of a defendant's cell phone incident to a custodial arrest violated the Fourth Amendment. The Court

11

assessed the reasonableness of the warrantless search by conducting a balancing analysis. This test weighs "'on the one hand, the degree to which [the warrantless search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 2484 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

The Court found the government's interests identified in *Chimel*—harm to officers and destruction of evidence—to be minimal. Turning to the other half of the scale, the Court recognized that an arrestee has diminished privacy interests, but this "does not mean that the Fourth Amendment falls out of the picture entirely." 134 S. Ct. at 2488. Where cell phones are concerned, privacy interests are at their apogee: Quantitatively, cell phones have an "immense storage capacity" that houses a vast array of information moored far into the owner's past. *Id.* at 2489. Qualitatively, cell phones may reveal detailed information about all aspects of a person's life" through search history, geolocation data, and apps. *Id.* at 2490. Given that privacy interests far outweighed any governmental interests identified by *Chimel*, the Court announced a clear bright line rule: the warrantless search of a cell phone incident to arrest is constitutionally unreasonable. Hammering this point home, the Court added: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 2495.

### 3. The unlawful search of Vanegas' cell phone

The facts here are indisputable. Following Vanegas' arrest and without a warrant, FBI agents searched the contents of Vanegas' cell phone and through the use of a "cellebrite machine" extracted hundreds of text messages and other data. (J.A. 370.) These text messages led agents to Walsh. (*See* J.A. 262–80.) In light of *Riley*, the warrantless search of Vanegas' cell phone was patently unconstitutional, and the evidence obtained from the search was tainted.[5]

### **CONCLUSION**

For the reasons stated above, Vanegas preserved his Fourth Amendment claim and the search conducted by the FBI of his cell phone violated his constitutional rights as guaranteed by the Fourth Amendment. Vanegas accordingly requests any and all relief this Court finds just and appropriate, including remand for a new trial

---

[5] This Court appointed counsel to brief the issues of (1) whether Vanegas had properly preserved his Fourth Amendment claim and (2) whether his Fourth Amendment rights had been violated. Counsel has to the best of his ability made good faith arguments on these points. That said, counsel is duty bound to bring to this Court's attention that the Supreme Court has held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Davis v. United States*, 131 S. Ct. 2419, 2429 (2011). And this Court in *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009), concluded that searches of an arrestee's cell phone by DEA agents did not run afoul of the Fourth Amendment. Thus, even though the search conducted by the FBI here violated the Fourth Amendment, the holding of *Davis*, coupled with that of *Murphy*, appears to foreclose application of the exclusionary rule. Still, Vanegas, through counsel, respectfully argues that *Davis* was wrongfully decided and reserves any and all rights to seek *certiorari* to challenge *Davis*' holding.

                                          Respectfully Submitted,

By:         /s/        

Joseph R. Pope
WILLIAMS MULLEN
A PROFESSIONAL CORPORATION
200 South 10th Street (23219)
P.O. Box 1320
Richmond, VA 23218
Telephone: (804) 420-6000
Facsimile: (804) 420-6507
jpope@williamsmullen.com

*Counsel for Appellant*

14

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-4455    Caption: US v. Jose D. Vanegas

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [✓] this brief contains __3,064__ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [✓] this brief has been prepared in a proportionally spaced typeface using __MS Word 2010__ [*identify word processing program*] in __Garamond, 14 point__ [*identify font size and type style*]; **or**

    [ ] this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Joseph R. Pope

Attorney for appellant

Dated: 2/27/2015

04/13/2012
SCC

# CERTIFICATE OF SERVICE

I certify that on  2/27/2015  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Richard D. Cooke
Assistant United States Attorney
600 East Main Street, Suite 1800
Richmond, Virginia 23219

/s/ Joseph R. Pope                         2/27/2015
_____          _____
         Signature                                   Date